FA'ATILIGA TAPUVAE, MAFA TUIKA, TU'UTAU P. FANENE, TIA PENITUSI, ERIC HOWLAND, LOUISULU LE'I, POPOALI'I UOTI, FAIVALE GA'OPO'A, ROBERT KEY, PASELIO LEATISUA, and NOFO VAILAAU, for themselves, for the AMERICAN SAMOA DEVELOPMENT CORPORATION (ASDC), and for shareholders of ASDC similarly situated, Plaintiffs,

v.

A.P. LUTALI as individual, as former Director and President of ASDC, and as Governor of American Samoa, ENI HUNKIN as individual and as Lieutenant Governor of American Samoa, STEVE WATSON as individual and as Executive Assistant to the Governor, J.R. SCANLAN as individual, as Assistant to the Governor and as Director of ASDC, LEULUMOEGA S. LUTU as individual and as Attorney General of American Samoa, JOHN SAMIA as individual and as Chairman of the Board of Directors of ASDC, FAAUUGA ACHICA as individual and as Secretary of ASDC, VERA ANNESLEY as individual and as Director of ASDC, FAIIVAE A. GALEA'I as individual and as Director of ASDC, TUIAFONO MATAUTIA as individual and as Director of ASDC, SILI K. SATAUA as individual and as Director of ASDC, AIGA TASI, Inc., LI'A AFUVAI as an officer of Aiga Tasi Inc., and DEVELOPMENT BANK OF AMERICAN SAMOA, Defendants

High Court of American Samoa
Trial Division

CA. 103-86

January 20, 1987

-1-

Before REES, Chief Justice, AFUOLA, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For the Plaintiffs, Aviata Fa'alevao
 For the Defendants, Martin Yerick,
 Assistant Attorney General

Opinion and Order on Motion to Amend Judgment:

On December 10, 1986, at the conclusion of the plaintiffs' case, we granted the defendants' motion for summary judgment on all but three relatively minor issues. On these issues the defendants agreed to have judgment entered against them. Plaintiffs now move for various amendments to the summary judgment.

The motion is grounded on three principal contentions:

(1) The Court should have stated its conclusions of law separately from its findings of fact;

(2) The Court erred in concluding that the option contract to buy stock owned by the Development Bank of American Samoa was legal, since the Governor has no authority to act for the Development Bank in matters concerning the sale of securities;

(3) The Court neglected to address several of plaintiffs' claims concerning the selection of the present Board of Directors.

I. Findings of fact and conclusions of law.

Plaintiffs allege that "there were no findings of fact and conclusions of law" in the Court's order. This statement seems to overlook the fact that, after ruling from the bench, the Court issued a lengthy written opinion containing detailed findings of fact as well as conclusions of law. Plaintiffs correctly observe, however, that our rules of civil procedure require the Court to "state separately its conclusions of law." TCRCP Rule 52(a) (emphasis added); See TCRCP Rule 41(b). We therefore append a separate statement of our conclusions of law.

2

## II. The Governor's authority to negotiate the option contract.

As we pointed out in our written opinion, subsequent to the conclusion of the option contract the Board of Directors passed a resolution endorsing the sale of stock. The sale was only one feature of the contract, which also involved related undertakings by A.S.G. Obviously, the stock could never have been sold without the approval of the Board of Directors of the Development Bank. If, however, the Governor had been unsuccessful in securing the assent of the Board, the people with standing to complain would have been the other contracting parties, not the plaintiffs.

## III. The selection of the directors.

Plaintiffs alleged a number of irregularities in the selection of the current directors of A.S.D.C. Although the Court addressed the allegation on which plaintiffs seemed principally to rely --- the contention that the Governor "appointed" the directors by voting the shares owned by the Development Bank --- certain other claims were not addressed.

Defendants urge that plaintiffs waived these contentions by not pressing them at trial. Plaintiffs did, however, allude to the alleged irregularities in their trial memorandum and produced evidence of them at trial. Although both the Court and opposing counsel were under the impression that the plaintiffs' evidence concerning the January 18, 1985 meeting was directed only at their contention that the Governor "appointed" the directors, a review of the record reveals that this evidence was also relevant to the plaintiffs' other allegations. Plaintiffs did not waive some alleged irregularities simply by emphasizing others.

Three irregularities asserted by the plaintiffs were not addressed in our opinion:

(a) The plaintiffs alleged not only that the seven directors elected at the January 18 meeting were "appointed" by the Governor, but also that three directors subsequently selected to fill vacancies were similarly "appointed." The second contention is virtually identical to the first, which we rejected in our original opinion. The only evidence for either contention is a statement by the Governor during a deposition. As he made

3

clear in his trial testimony, he "appointed" directors not in any technical or legal sense of the word, but only in the informal sense that he had the votes to get them elected. The evidence shows that the directors selected to fill vacancies were elected at a meeting of the ASDC Board of Directors, in accordance with the By-Laws.

(b) Plaintiffs also alleged, and produced testimony tending to show, that shareholders were not given the option of "cumulative voting" required by A.S.C. § 30.0142. This contention has merit. Although defendants urge that the statute leaves the decision on the manner of casting votes up to the corporation rather than to the individual shareholder, both the language of the statute and the history of "cumulative voting" provisions convince the Court otherwise. See H. Henn, Law of Corporations 364-66 (2d ed. 1970). Without the right of shareholders to cast their votes cumulatively, an individual or faction owning 51% of the shares in a corporation would always be able to elect 100% of the directors. If, however, each shareholder has the right to cast all his votes for one person, rather than dividing them up among a number of people equal to the number of directors, then each individual or faction will be able to elect a percentage of directors roughly equal to the percentage of shares it owns. A statute requiring the option of cumulative voting is thus an important guarantee of minority shareholders' rights.

The Court should not have granted summary judgment on this issue. On the other hand, we cannot grant a summary judgment for the plaintiffs without giving defendants a chance produce evidence that cumulative voting procedures were in fact followed. We therefore alter our previous order to deny summary judgment on the issue of cumulative voting at the January 18, 1985 meeting and set the issue for trial on March 18, when the claims by and against Aiga Tasi are already scheduled to be heard.

We must emphasize the limited scope of our ruling today. At most, the plaintiffs will be entitled to a declaratory judgment that cumulative voting procedures should have been followed at the January 18 meeting and an injunction requiring the corporation to hold a new election in accordance with such procedures. Such a judgment would not affect any other issue in the case. The Development Bank's ownership of the stock and the legality of

4

the option contract do not depend on the composition of the ASDC Board of Directors.

Nor can plaintiffs successfully assert the illegality of actions taken by the Board during the past two years on the ground that cumulative voting procedures were not followed in the election. There are two principal reasons for this. First, even in the unlikely event that all minority shareholders had cast their votes and had cast them for the same candidate or candidates, they could have elected only one or possibly two of the seven directors. Since plaintiffs produced no evidence at trial to prove that any action of the Board was taken by a one or two vote margin, there is no evidence that the procedures in electing the Board caused any of the Board actions of which plaintiffs complain. Even more important is the fact that the plaintiffs could have sued for an injunction requiring a new election on the day after the allegedly improper one, but instead waited over a year. While such a delay is no bar to prospective relief --- that is, to a suit directed at having an election in which proper procedures are followed--- it does deprive plaintiffs of the right to complain retrospectively of actions which they might have prevented by timely action.

We reiterate, however, that we were wrong to grant summary judgment on plaintiffs' claim that cumulative voting procedures should have been followed at the January 18, 1985 election. We hereby reverse that part of our holding, and set the matter for trial on March 18. Only defendants A.S.G., Lutali, Watson, the Development Bank, and the ASDC directors are involved in this claim. All defendants are involved only in their official capacities, since no evidence was produced showing that any defendant acted in bad faith or outside the scope of his official duties. Should all defendants acquiesce in a consent judgment on this issue, or should a new election prior to March 18 render the issue moot, the issue will not be tried.

(c) Plaintiffs produced evidence that notice to shareholders of the January 18, 1985 meeting was not by mail or personal delivery as required by the By-Laws, but was instead by publication in the newspaper. Plaintiffs did not allege in any of their pleadings, however, that any of the plaintiffs did not in fact receive notice of the meeting. The one plaintiff who testified, Eric Howland, did learn of the meeting and attended it. Even if the procedure was improper, no relief can

5

be granted in the absence of an allegation and proof that it resulted in some palpable injury to one or more of the plaintiffs. In this case the injury that might have occurred would have been denial of the right to vote. That the alternative method of notice was not shown to have interfered with the plaintiffs' right to vote does not excuse the officers of the corporation from their failure to comply with the By-Laws, but it does prevent a court of law from rendering judgment against them. Defendants therefore prevail on this issue. (In any case, even if the plaintiffs had alleged and proven that the improper notice resulted in the denial of their right to vote, they would have been entitled only to a declaratory judgment and a new election. Unless defendants can prove that cumulative voting procedures were in fact followed at the January 18 meeting, plaintiffs will be entitled to such relief in any case.)

The order issued on December 11, 1986, is hereby amended to deny summary judgment on the question whether shareholders were given the option of cumulative voting at the election meeting. We also append a separate statement of our conclusions of law in accordance with the plaintiffs' motion. In all other respects the motion is denied.